# **UNITED STATES DISTRICT COURT**
## **MIDDLE DISTRICT OF FLORIDA**
### **ORLANDO DIVISION**

**LANCE TURNER,**

                    **Plaintiff,**

**-vs-**                                            **Case No.  6:08-cv-118-Orl-28DAB**

**U-HAUL CO. OF FLORIDA 905, LLC,**

                    **Defendant.**

_____

## **ORDER**

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:**    **MOTION TO COMPEL ARBITRATION (Doc. No. 9)**
>
> **FILED:**       **February 8, 2008**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

> **MOTION:**    **MOTION FOR LEAVE TO REPLY AND FILE A FURTHER RESPONSE (Doc. No. 14)**
>
> **FILED:**       **February 29, 2008**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**. According to the motion, "U-Haul's Motion to Compel Arbitration is clear, complies with Fed. R. Civ. P. 11 and is adequately supported." If so, there is no need to file further papers. Regardless, as set forth herein, the Court has considered the substance of the proposed Reply.

At issue is Defendant's motion to compel arbitration, based on an unsigned, incomplete electronic form linked to a web page of a related (but separate) company and found under the title

"Employment Dispute Resolution benefit." For the reasons set forth herein, the Court finds no agreement to arbitrate exists between these parties and, as such, the motion is **denied.**

## *FACTUAL BACKGROUND*

The Court accepts the following factual representations, set forth by the parties in the papers, for present purposes. Plaintiff became an at will employee of U-Haul Co. of Florida, a *non-party* corporation (herein "the Employer") on or about May 9, 2005. Defendant is "a subsidiary and affiliate" of the Employer, and owner of the premises where Plaintiff was shot during an armed robbery. Effective February 20, 2006, the Employer instituted an Employment Dispute Resolution Policy (herein "the Policy"), which Defendant asserts requires arbitration of all disputes between all employees and the Employer and any of its subsidiaries and affiliates.

There is no signed agreement to arbitrate, rather, Defendant proffers a Notice To Employees About U-Haul's Employment Dispute Resolution Policy (Doc. No. 9-3, herein "the Notice") and a "U-Haul Employee Agreement To Arbitrate" (Doc. No. 9-3, p. 4 "the Agreement"). Both documents are unsigned, undated forms which contain blanks for entry of the name of the employee and the employer. Defendant asserts that by logging on to the Employer's website at the Human Resources page, an employee would find the following:

> **Sign up for the New U-Haul Employment Dispute Resolution Benefit**
>
> U-Haul provides this benefit to keep open the channels of communication and is confident that most problems, dispute[] complaints can be handled by either your immediate supervisor or by a higher level of management. The Employment [ ] Resolution allows you to quickly resolve any remaining disputes that you may have with U-Haul in a private and final m[] that will avoid litigation and foster our long-term relationship. Sign up now.[1]

---

[1]The text is taken verbatim from the copy provided to the Court. Doc. No. 9-4.

Defendant contends that when individuals log on to the Human Resource Service Center Web page "and access the Employment Dispute Resolution ("EDR") benefit, they are linked to the Notice and the blanks which appear on the Notice....are automatically filled in electronically to reflect the employee's name as well as the entity which employs the individual." (Doc. No. 14). Although Defendant contends that Plaintiff accessed the Human Resources webpage numerous times, it does not proffer a copy of anything but the blank forms.

In August 2007, Plaintiff and dozens of other employees received an email from a manager which stated:

> The following people need to sign in to uhaul.com on the main sign in screen and sign the Arbitration Agreement. This needs to be done today. Email or call and let me know where these have been completed.

Plaintiff did not sign the agreement, but responded via return email: "At the instruction of my attorney, I will not be able to sign the UHI Arbitration Agreement." (Doc. No. 9-6).

Defendant now seeks to compel arbitration, asserting that it is a third party beneficiary to the alleged arbitration agreement. Because the Court finds that no such enforceable agreement exists, the motion is **DENIED.**

### *ISSUES AND ANALYSIS*

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2; *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). While the FAA applies to arbitration agreements, state law generally governs whether an enforceable contract or agreement to arbitrate exists. *Caley,* 428 F.3d at 1368 ("[I]n determining

whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts.")  Here, Florida appears to be that state.

As noted by one Florida court:

Under both federal statutory provisions and Florida's Arbitration Code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *Florida Power Corp. v. City of Casselberry*, 793 So.2d at 1178-1179.  All doubts regarding the scope of an arbitration agreement, as well as any questions about waiver, should be construed in favor of arbitration rather than against it. *See Rath v. Network Mktg., L.C.*, 790 So.2d 461, 463 (Fla. 4th DCA 2001); *Breckenridge v. Farber*, 640 So.2d 208, 210 (Fla. 4th DCA 1994).

*Qubty v. Nagda ,* 817 So.2d 952, 956 (Fla. 5th DCA 2002).

The Court begins by noting the obvious:  there is no signed, written agreement to arbitrate anything in this case.  Nonetheless, Defendant contends that no signature is required and that Turner's continued employment constituted acceptance of the arbitration provisions contained in the Notice and the Agreement, as a matter of law.  This argument misses the mark, however, in that it presumes that the only thing missing here is Plaintiff's signature.  While the Court readily agrees with the general proposition that a signature is not always required, and continued employment may constitute acceptance of a written arbitration policy under certain conditions, here, there is no evidence of the one thing that is absolutely crucial to a motion to compel arbitration under either state or federal law: a *written agreement to arbitrate*.

It is basic hornbook law, followed in Florida, that an agreement requires an offer and an acceptance.  While that acceptance may be manifested in many ways, an agreement requires, at the very least, notice and assent (either express or implied) to certain stated terms.  *See Acosta v. District Bd. of Trustees of Miami-Dade Community College,* 905 So.2d 226, 228 (Fla. 3rd DCA 2005) *("*The

-4-

rule is generally recognized that for the parties to have a contract, there must be reciprocal assent to certain and definite propositions") (internal citation omitted). Such is lacking here.

As indicated above, the Employer (*not* the Defendant) posted a blurb on the Human Resources web page about an Employment Dispute Resolution *benefit.* While the Court is willing to find that Plaintiff had notice of this blurb, nothing in this blurb purports to establish a binding agreement to arbitrate (the word "arbitrate" is not even mentioned), and no terms of the "benefit" are set forth. Moreover, the blurb specifically states "sign up now," a reference that can only be interpreted as providing, at best, an *offer* to engage in a *benefit,* which offer must be accepted by *signing up now.* Plaintiff did not do so.

In *Campbell v. General Dynamics Government Systems Corporation,* 321 F. Supp.2d 142 (D. Mass. 2004), the Massachusetts District Court held that e-mail notification of a dispute resolution policy was insufficient where the heading of email did not indicate that email intended to change legal rights, there was no reference in text that employer expected employees to be bound by the policy if they continued working there, there was no evidence that the employee read e-mail or opened attachments, and employer made no other effort to inform employees of the policy. In affirming that decision, the First Circuit also noted that the General Dynamics email "undersold the significance of the Policy and omitted the critical fact that it contained a mandatory arbitration agreement." *Campbell v. General Dynamics Government Systems Corporation,* 407 F. 3d 546, 558 (1st Cir. 2005). The blurb here is similarly flawed. As a matter of law, the blurb itself is not a binding, written arbitration agreement.

While the blurb, viewed in isolation, is clearly not an arbitration agreement, Defendant contends that the Notice and Agreement attached to the motion constitute a binding writing, and

-5-

proffers evidence that an employee could click the link on the Human Resources webpage, further click on the blurb, and thus, access the Notice and Agreement. This contention is unpersuasive. First and foremost, while the Court is willing to accept the representation that an employee *could* do this, there is no evidence that Plaintiff, in fact, did so. Moreover, the Notice and the Agreement presented to the Court contain blanks for clearly essential terms, and the document requires the employee's signature.[2] Although Defendant contends that the blanks are filled in automatically when an employee accesses the form; tellingly, Defendant does not proffer that completed form, nor a log in showing that Plaintiff accessed the completed forms. Rather, Defendant tenders a blank form and a log that shows that Plaintiff accessed the Human Resources web *site,* but not that he clicked the link to the Notice and Agreement. The only evidence of a "writing" are the blank Notice and Agreement presented to the Court. As the Notice and the Agreement do not specify all of the essential terms of the Agreement, these unsigned, incomplete forms are not enforceable.[3]

Without more, the mere existence of this blurb coupled with unsigned blank forms cannot serve as adequate notification and acceptance of a unilateral arbitration agreement. Defendant asserts, however, that Plaintiff had notice of the Policy via a subsequent email, and acceptance can be implied. This contention, too, is unpersuasive. The record shows that Plaintiff's manager sent an email

---

[2] The omissions go to the heart of the Notice and Agreement. For example, the Notice provides: "The EDR applies to all _____ employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with _____ or the termination of that employment" and "Your decision to accept employment or to continue employment with ____ constitutes your agreement to be bound by the EDR." (Doc. No. 9-3). The Agreement provides: "I agree that it is my obligation to make use of the EDR and to submit to final and binding arbitration any and all claims and disputes (except those covered by the National Labor Relations Act) that are related in any way to my employment or the termination of my employment with _____", noting, too, that "arbitration will be the sole and exclusive remedy for any such claim or dispute against _____, . . . " (Doc. No. 9-3).

[3] The Court does not imply that the purported agreement fails because it was created electronically. Any such interpretation is likely precluded by the Electronic Signatures in Global and National Commerce Act (the E-Sign Act), 15 U.S.C. § § 7001-7031. Rather, the Court finds that the writing never ripened to an agreement, because the record does not reflect notice and assent to certain *stated* terms.

directing him to sign in to the website, and access and sign the "Arbitration Agreement," and Plaintiff responded that he would not be able to do so, at the instruction of his attorney. However, even if this email were enough to imply that Plaintiff did, in fact, click on the link and receive the materials (and the Court makes no such finding), such is not sufficient to imply acceptance of the Agreement in view of Plaintiff's explicit rejection *and* as the text of the email *directly contradicts* the terms of the Notice and Agreement.

The Notice provides, in pertinent part: "Your decision to accept employment or to continue employment with _____ constitutes your agreement to be bound by the EDR."  The text of the email, however, did *not* say that continued employment constitutes acceptance of the Policy/Arbitration Agreement; instead, the text set forth a completely different mode of acceptance: requiring that Plaintiff sign the Arbitration Agreement, and sign it "today." Moreover, the Agreement itself is drafted in the first person ("I acknowledge" "I agree") and provides for the employee's signature, printed name and date. That signature was never obtained.

Under Florida law, assent can be manifested in several ways. Thus, a contract may be binding on a party even without that party's signature where assent may be shown by the acts or performance of the party.  *See Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So.2d 500 (Fla. 4th DCA 2003). "Even if parties do not sign a contract, they may be bound by the provisions of the contract, if the evidence supports that they acted as if the provisions of the contract were in force." *Sosa v. Shearform Mfg.*, 784 So.2d 609, 610 (Fla. 5th DCA 2001).  Here, of course, the evidence is just the opposite. Far from agreeing to arbitrate, Plaintiff expressly rejected arbitration. While Defendant cites numerous cases for the proposition that continued employment can constitute acceptance of an

arbitration agreement, no Florida cases are cited for this point and none of the cases present similar facts.

For example, in *Seawright v. Am. Gen. Fin. Serv.,* 507 F.3d 967 (6th Cir. 2007), unlike here, the company held numerous meetings about the EDR program, mailed letters to employees explaining the program, and the employee signed an attendance sheet acknowledging attendance at an informational meeting about the program and receipt of a copy of the mandatory policy. Applying Tennessee law to these facts, the Sixth Circuit had no trouble finding that continuing to work in the face of knowledge of a mandatory policy that provided that continuing to work constituted acceptance of the policy rendered the agreement enforceable. Notably, however, the court expressly distinguished an earlier case which found no enforceable agreement, stating: "[U]nlike Seawright, the plaintiff in *Lee*[4] explicitly told her boss that she did not assent to the agreement." *Id.* at 973.[5] Here, of course, Plaintiff, too, explicitly rejected the agreement.

*Berkley v. Dillards, Inc.,* 450 F.3d 775 (8th Cir. 2006), cited by Defendant, is likewise distinguishable. Under Missouri law, acceptance was found to occur after the employee continued to work even though she refused to sign the arbitration policy. Unlike the instant case, however, after she refused to sign, the employer told her that her refusal was ineffective and the policy applied to her "automatically." Her continuing to work subsequent to that conversation was deemed sufficient to

---

[4] *Lee v. Red Lobster Inns of America, Inc.,* 92 Fed. Appx. 158 (6th Cir. 2004) (unpublished).

[5] The Court agrees with the Sixth Circuit's reasoning in *Lee,* to wit: "Therefore, a company cannot unilaterally impose a mandatory binding-arbitration policy on an employee without her assent. In other words, the company cannot just adopt a policy that it cannot be sued by its employees and thereby make it so. For an arbitration agreement to be binding, it must be an agreement, not merely a company policy." *Lee v. Red Lobster Inns of America, Inc*., 92 Fed.Appx. 158, *161, 2004 WL 187564, **3 (6th Cir. 2004).

imply her acceptance. Here, not only did no such conversation occur, but both parties behaved at all times as if Plaintiff's signature was mandatory in order to assent to the Agreement.

In that respect, the Court finds this case to be remarkably similar to *Reheiser v. The Terminix International Co.*, 2006 WL 1653444 (N.D. Fla. 2006). There, Terminix required all employees to sign a new employment agreement with an arbitration clause. Employees were given a few days to sign the agreements or face termination. A meeting was held and Plaintiff, a supervisor who signed the agreements on behalf of the *company,* refused to sign on his own behalf. He was terminated immediately, and sued. Terminix moved to compel arbitration, claiming, among other things, that "Plaintiff's decision to continue working after being notified of the implementation of the Agreements 'constitutes a sufficient showing of 'acceptance' of the [Agreements] under Florida law.'" *Id.* Applying Florida law, the *Terminix* court found that while Terminix clearly made an offer, "Plaintiff did not manifest his intent to accept Terminix's offer." The court noted:

> Here, unlike in *Caley*, Terminix did not inform its employees that the Agreements would apply to every employee by a certain date if they continued working at Terminix, notwithstanding their failure to sign. In fact, based on the meeting that took place between Reeves and Plaintiff, it is clear that Terminix deemed the signing of the Agreements to be the critical event in manifesting consent to the Agreements.
>
> If Terminix believed that Plaintiff's decision to continue working in the intervening period was sufficient to constitute Plaintiff's implied consent to the Agreements, Reeves would not have demanded that Plaintiff sign the documents or face immediate termination.

*Reheiser,* 2006 WL 1653444, at 2. Here, too, the evidence is clear that the Employer "deemed the signing of the Agreement to be the critical event in manifesting consent to the Agreement." The blurb on the web site urged "sign up now." The email from the manager stated that Plaintiff "needs" to sign the Agreement and "this needs to be done today." The Agreement itself is drafted in the first person

and has a signature block for the Employee. Plainly, the Employer acted at all times as if the employee's signature was necessary in order to bind an employee to the Agreement. Having specified a particular mode of acceptance, there can be no agreement absent such acceptance.[6] Here, to the extent Plaintiff had notice of the Policy, he plainly rejected it. Under these circumstances, no assent to stated terms can be reasonably implied.[7] As no valid written agreement to arbitrate has been shown, the Court need not address Plaintiff's other arguments. The motion is **denied.**

**DONE** and **ORDERED** in Orlando, Florida on March 14, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[6] Alternatively, to the extent these contrary communications create an ambiguity, Florida follows the general rule that any contract ambiguity is construed against the drafter. *Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1549 (11th Cir. 1996) (construing Florida law).

[7] Having failed to follow through on its stated position that continued employment was dependent on agreeing to arbitration, Defendant is in no position to claim any implied consent by Plaintiff.